TORKILDSON KATZ
HETHERINGTON HARRIS & KNOREK
Attorneys at Law, A Law Corporation

J. GEORGE HETHERINGTON 2241-0
(jgh@torkildson.com)
BRIAN W. TILKER                9684-0
(bwt@torkildson.com)
JACOB A. KAMSTRA          11133-0
(jak@torkildson.com)
700 Bishop Street, 15th Floor
Honolulu, HI  96813
Telephone: (808) 523-6000
Facsimile: (808) 523-6001

GEORGE M. KRAW (*pro hac vice*)
KATHERINE MCDONOUGH (*pro hac vice*)
Kraw Law Group, APC
605 Ellis Street, Suite 200
Mountain View, CA 94043

Attorneys for Plaintiffs
CARPET, LINOLEUM & SOFT TILE LOCAL
UNION 1926 TRUST FUNDS (ANNUITY
FUND, HEALTH & WELFARE FUND,
MARKET RECOVERY FUND, PENSION
FUND, TRAINING FUND, AND VACATION
& HOLIDAY FUND, BY THEIR TRUSTEES
DOUGLAS KEMA, JR., RYDEN VALMOJA,
PATERNO ASUNCION, MALCOLM
NAKAMURA, MARC MATSUBARA, KEITH
EMERSON, AND TIM LYONS)

*(caption continued on next page)*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CARPET, LINOLEUM & SOFT TILE LOCAL UNION 1926 TRUST FUNDS (ANNUITY FUND, HEALTH & WELFARE FUND, MARKET RECOVERY FUND, PENSION FUND, TRAINING FUND, AND VACATION & HOLIDAY FUND, BY THEIR TRUSTEES DOUGLAS KEMA, JR., RYDEN VALMOJA, PATERNO ASUNCION, MALCOLM NAKAMURA, MARC MATSUBARA, KEITH EMERSON, AND TIM LYONS),<br><br>         Plaintiffs,<br><br>    v.<br><br>MODERN FLOORING LLC, A DOMESTIC LIMITED LIABILITY COMPANY,<br><br>         Defendant. | CIVIL NO. CV 20-00303 LEK-KJM<br><br>PLAINTIFFS' OBJECTIONS TO MAGISTRATE'S ORDER [ECF No. 77]; CERTIFICATE OF COMPLIANCE WITH LR7.4; CERTIFICATE OF SERVICE |

# **TABLE OF CONTENTS**

Table of Authorities ........................................................................................... ii

STANDARD OF REVIEW ..................................................................................1

BACKGROUND ..................................................................................................4

Plaintiffs' Objections to Futility Determination as to Count I of Proposed FAC .....8

MRF Plaintiffs' Objection as to Futility Determination Regarding Counts III, IV, V and VI of Proposed FAC .........................................................................12

Plaintiffs' Objection to Futility Determination as to Counts IV, V, and VI of Proposed FAC .....................................................................................................13

    1.    Express Preemption.................................................................14

    2.    Conflict Preemption ...............................................................21

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Aetna Health Inc. v. Davila,* 542 U.S. 200, 213 (2004)...........................................26

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 121 F. Supp. 3d 950 (C.D. Cal. 2015) ...............................................................26

*Amfac Mortg. Corp. v. Arizona Mall of Tempe, Inc.*, 583 F.2d 426 (9th Cir. 1978) ...................................................................................................9

*Arc in Hawaii v. DB Ins. Co., LTD*, --- F. Supp. 3d ---, Civ. No. 20-00112-ACK-WRP, 2021 WL 2481672 (D. Haw. 2021) ................................9

*Au v. Funding Grp., Inc.*, Civil No. 11–00541 SOM/KSC, 2012 WL 3686893 (D. Haw. Aug. 24, 2012) ...............................................................1, 2

*Barahona v. Union Pac. R.R. Co.*, 881 F.3d 1122 (9th Cir. 2018)...........................13

*Bastidas v. Chappell*, 791 F3d 1155 (9th Cir. 2015) ..................................................3

*Blue Cross of Cal. Inc. v. Insys Therapeutics Inc.*, 390 F. Supp. 3d 996 (D. Ariz. 2019) ...............................................................................................14

*Blue Cross of Cal. V. Anesthesia Care Assocs. Med. Grp., Inc.*, 187 F.3d 1045 (9th Cir. 1999)...................................................................................26

*California Div. of Labor Standards Enf't v.  Dillingham Constr., N.A., Inc.*, 519 U.S. 316 (1997)...........................................................................................13

*Carvalho v. Equifax Info. Servs., LLC,* 629 F.3d 876 (9th Cir. 2010)......................3

*Coleman v. Standard Life Ins. Co.*, 288 F. Supp. 2d 1116 (E.D. Cal. Oct. 14, 2003) ...............................................................................................................11

*D.C. v. Greater Washington Bd. of Trade*, 506 U.S. 125 (1992) ............................22

*De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806 (1997)....12, 22

*Delano v. Unified Grocers, Inc.*, No. 2:19-cv-00225-TLN-DB, 2020 WL 903197 (E.D. Cal. Feb. 25, 2020).......................................................................11

*Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643 (9th Cir. 2016) .. 14, 21-23

*Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001) .....................................19

*Elliott v. Fortis Benefits Ins. Co.*, 337 F.3d 1138 (9th Cir. 2003) ...........................23

*Fossen v. Blue Cross & Blue Shield of Montana, Inc.*, 660 F.3d 1102 (9th Cir. 2011) ............................................................................................................21, 22

*Garrick Cox MD LLC v. Cigna Healthcare*, No. 16-4611 (SDW) (LDW), 2016 WL 6877778 (D. N.J. Oct. 28, 2016) ......................................................27

*Geller v. County Line Auto Sales, Inc.*, 86 F.3d 18 (2d. Cir. 1996) .................16, 20

*Gerosa v. Savasta & Co.*, 329 F.3d 317 (2d Cir. 2003).........................................19

*Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312 (2016) ...................................14, 18

*Golden Gate Rest. Ass'n v. City & Cty. of San Francisco*, 512 F.3d 1112 (9th Cir. 2008)..............................................................................................15

*Hooper v. Shinn*, 985 F.3d 594 (9th Cir. 2021) .......................................................3

*Howard Jarvis Taxpayers Ass'n v. Cal. Secure Choice Ret. Sav. Program*, 997 F.3d 848 (9th Cir. 2021) ...............................................................................19

*Hunt v. Pliler*, 384 F.3d 1118 (9th Cir. 2004) .......................................................10

*Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133 (1990) .......................................18

*Ingram v. Cates*, No. CV 12-7881-DOC (KK), 2015 WL 13874637 (C.D. Cal. Dec. 9, 2015*) ...........................................................................................9

*JJCO, Inc. v. Isuzu Motors America, Inc.,* Civ. No. 08-00419 SOM/LEK, 2009 WL 3818247 (D. Hawai'i Nov. 12, 2009) ....................................................2

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) ....................................15

*Mathews v. Chevron Corp.*, 362 F.2d 1172 (9th Cir. 2004) .....................................1

*Matsuda v. Wada*, 101 F. Supp. 2d 1315 (D. Haw. 1999)........................................23

*Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209 (9th Cir. 1988)....................................13

*New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645 (1995) ....................................................................16

*Nielson v. Unum Life Ins. Co. of Amer.*, 58 F. Supp. 3d 1152 (W.D. Wash. 2014) ..............................................................................................26

*Philadelphia Indem. Ins. Co. v. Ohana Control Sys., Inc.*, 289 F. Supp. 3d 1141 (D. Haw. 2018) ........................................................................15

*Rojas v. Cigna Health & Life Ins. Co.*, No. 14-CV-6368 (KMK), 2018 WL 4759775 (S.D.N.Y. Sept. 29, 2018)...................................................25

*Roupe v. Strickland,* No. C13-2131-JCC-BAT, 2014 WL 3739505 (W.D. Wash. July 29, 2014) ...................................................................3

*Rutledge v. Pharm. Care Mgmt. Ass'n*, --- U.S. ---, 141 S. Ct. 474 (2020) ......18, 20

*Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85 (1983) .................................................22

*Sigwart v. U.S. Bank Nat'l Ass'n,* No. CV 13-00529 LEK-RLP, 2018 WL 6834697 (D. Haw. Dec. 28, 2018)...................................................2

*Simonyan v. Countrywide Fin. Corp.*, No. CV 10–2455 AHM, 2011 WL 12611772 (C.D. Cal. Jan. 26, 2011) ...............................................10

*Smallwood v. NCsoft Corp.*, 730 F. Supp. 2d 1213 (D. Haw. 2010).......................24

*Standard Oil Co. of California v. Agsalud*, 633 F.2d 760 (9th Cir. 1980), aff'd, 454 U.S. 801 (1981)....................................................................17

*TML Recovery LLC v. Nw. Mut. Life Ins. Co.*, No. 8:18-CV-02011-JLS-ADS, 2019 WL 6898941 (C.D. Cal. June 21, 2019)...........................24

*Trs. of Nat. Asbestos Workers Med. Fund v. Wilson*, No. 2:12–cv–06449, 2014 WL 1329935 (S.D.W.V. Mar. 28, 2014)...................................25

*Trustees of AFTRA Health Fund v. Biondi*, 303 F.3d 765 (7th Cir. 2002).............16

*U.S. ex rel. Source Helicopters, Division of Rogers Helicopters, Inc. v. Sayers Constr., LLC*, No. 2:19-CV-1602 JCM (EJY), 2020 WL 3643431 (D. Nev. Jul. 6, 2020)........................................................2

*U.S. v. Raddatz*, 447 U.S. 667 (1980).......................................................................2

*Wilson v. Zoellner*, 114 F.3d 713 (8th Cir. 1997)......................................................15

**FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

28 U.S.C. § 636(b)(1)................................................................................1, 2

28 U.S.C. § 636(b)(1)(A)..............................................................................3

28 U.S.C. § 636(b)(1)(B) .............................................................................1

28 U.S.C. §1367........................................................................................4

29 U.S.C. §§ 1002 *et seq.*............................................................................5

29 U.S.C. § 1132................................................................................7, 12, 20, 21, 22

29 U.S.C. § 1144................................................................................12, 13, 16, 21

Employee Retirement Income Security Act of 1974 ....................................4

Federal Rules of Civil Procedure ("FRCP") Rule 8 ..................................11

FRCP Rule 12(b)(6) ...................................................................................4

FRCP Rule 72 ............................................................................................1

FRCP 72(a) ...............................................................................................1

FRCP 72(b) ...............................................................................................1

National Labor Relations Act ................................................................5, 9

**STATE: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

Labor Management Cooperation Act of 1978 .......................................6, 28

Labor Management Relations Act ...............................................................4

PLAINTIFFS' OBJECTIONS TO
MAGISTRATE'S ORDER [ECF No. 77]

Pursuant to 28 U.S.C. § 636(b)(1), Rule 72 of the Federal Rules of Civil
Procedure, and LR74.2 (or, alternatively, LR74.1), Plaintiffs, above-named,
("Plaintiffs"), hereby objects to the below-referenced portions of the Order
Granting in Part and Denying in Part Plaintiffs' Motion For Leave to File First
Amended Complaint [ECF No. 77] filed herein on October 6, 2021 (the "Order").

## **STANDARD OF REVIEW**

Parties may object to magistrate judge's non-dispositive and dispositive
pretrial orders. *See* Fed. R. Civ. P. 72(a) and (b); LR74.1(a); LR74.2.  When
reviewing objections to a *non-dispositive* order of a magistrate judge, "[t]he district
judge in the case must consider timely objections and modify or set aside any part
of the order that is clearly erroneous or contrary to law."  Fed. R. Civ. P. 72(a).
The clearly erroneous standard requires a "definite and firm conviction that a
mistake has been committed[.]"  *Mathews v. Chevron Corp.*, 362 F.2d 1172, 1180
(9th Cir. 2004) (citation omitted).

"By contrast, absent consent by the parties, a magistrate may opine on a
dispositive matter only by making findings or report and recommending action to a
district judge." *Au v. Funding Grp., Inc.*, Civil No. 11–00541 SOM/KSC, 2012
WL 3686893, at *1 (D. Haw. Aug. 24, 2012) (citing 28 U.S.C. § 636(b)(1)(B)).
When reviewing objections to a magistrate judge's dispositive order:

A judge of the court shall make a de novo determination of those portions of the report or specified proposed recommendations to which objection is made.  A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.

28 U.S.C. § 636(b)(1); see also U.S. v. Raddatz, 447 U.S. 667, 676 (1980) (citation omitted) ("[I]n providing for a 'de novo determination' rather than [de novo] hearing, Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations.").

"[W]hen a magistrate judge denies leave to amend to add a new claim or new party, this is considered a dispositive order."  Sigwart v. U.S. Bank Nat'l Ass'n, No. CV 13-00529 LEK-RLP, 2018 WL 6834697, at *3 (D. Haw. Dec. 28, 2018) (citing JJCO, Inc. v. Isuzu Motors America, Inc., Civ. No. 08-00419 SOM/LEK, 2009 WL 3818247, at *2-3 (D. Hawai'i Nov. 12, 2009)); but see Au, 2012 WL 3686893, at *1 (noting "a motion for leave to file an amended complaint is generally considered a nondispositive matter").

Other district courts in this Circuit have also determined that a magistrate's futility determination is dispositive and thus subject to de novo review.  See, e.g., U.S. ex rel. Source Helicopters, Division of Rogers Helicopters, Inc. v. Sayers Constr., LLC, No. 2:19-CV-1602 JCM (EJY), 2020 WL 3643431, at *2 (D. Nev. Jul. 6, 2020) (finding "a denial of a motion to amend premised on futility is

dipositive"); *Roupe v. Strickland*, No. C13-2131-JCC-BAT, 2014 WL 3739505, at

*1 (W.D. Wash. July 29, 2014) ("When deciding whether a magistrate judge

properly denied a party leave to file an amended pleading because amendment

would be futile, the Court reviews the magistrate judge's order *de novo*." (citing

*Carvalho v. Equifax Info. Servs., LLC,* 629 F.3d 876, 893 (9th Cir. 2010))).

Further, the Ninth Circuit has explained that the key factor in determining

whether a denial of a motion for leave to amend is dispositive is to examine the

*effect* of the denial:  "to determine whether a magistrate judge's ruling denying a

motion is dispositive, **we examine whether the denial of the motion effectively

disposes of a claim** or defense or precludes the ultimate relief sought." *Bastidas v.

Chappell*, 791 F3d 1155, 1164 (9th Cir. 2015) (emphasis added).

Moreover, deeming a futility determination dispositive is consistent with a

reasonable interpretation of the governing rules and statutes.  28 U.S.C. §

636(b)(1)(A) provides that "a judge may designate a magistrate judge to hear and

determine any pretrial matter pending before the court, **except** a motion . . . to

dismiss for failure to state a claim upon which relief can be granted[.]"  [Emphasis

added].  Since the standard for assessing futility on a motion for leave to amend is

the Rule 12(b)(6) standard (*see* Order at 4), it follows that an order disposing of

potential claims should be deemed dispositive.

-3-

Here, the sole basis for denial of leave to amend to add the proposed new claims was futility of amendment.  Thus, Plaintiffs respectfully request that the Court apply the *de novo* review standard to these Objections.

## **BACKGROUND**

On July 9, 2020, ECF No. 1, Plaintiffs filed a Complaint in this action ("Complaint").  The Complaint alleged that this action arises under the Labor Management Relations Act, as amended ("LMRA"), the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and the Multiemployer Pension Plan Amendments act of 1980.  Complaint at ¶ 5.   The Complaint alleged that jurisdiction is proper under supplemental jurisdiction, 28 U.S.C. §1367, in addition to claims arising under ERISA and claims for breach of contract under Section 301 of the LMRA.  *See* Complaint at ¶5.  The Complaint also alleges that Plaintiffs are third party beneficiaries of the applicable bargaining agreements and declarations of trust, and that Defendant failed to comply with certain obligations thereunder that resulted in damage to the Plaintiffs.  *Id.* ¶¶ 9-22, 25.

On August 24, 2020, Defendant filed its Answer to the Complaint (ECF No. 12) ("Answer").  Defendant set forth among its affirmative defenses therein that "Plaintiff Market Recovery Fund lacks the requisite standing to pursue claims against Defendant under [ERISA], 29 U.S.C. §§ 1002 *et seq.*" (*id.* at 5, ¶ 25), and

that "Plaintiffs' claims are preempted, in whole or in part, by the applicable sections of the National Labor Relations Act" (*id*. at 4, ¶ 17).

On August 26, 2021, Defendant filed its motion for partial summary judgment [ECF No. 64] ("Defendant's MPSJ"), on the basis that the Trustees of the Market Recovery Fund ("MRF Plaintiffs") lack standing to bring claims under the LMRA and ERISA.  *See generally id.*[1]

On August 27, 2021, Plaintiffs filed a Motion for Leave to File First Amended Complaint (ECF No. 65) ("Motion").[2]  Specifically, Plaintiffs sought leave to file a proposed First Amended Complaint ("Proposed FAC") that added newly discovered factual allegations, expanded the scope of the pertinent time period, and added new claims of unjust enrichment (Count III), fraudulent non-disclosure (Count IV), intentional misrepresentation (Count V), and negligent misrepresentation (Count VI) (not including unjust enrichment, the "Proposed Tort Claims").  *See generally* Motion.

---

[1] On October 19, 2021, the Court issued its Minute Order regarding the Order and Defendant's MPSJ. ECF. No. 80 (noting the Court's inclination to find Defendant's MPSJ "moot" while providing opportunity to submit a one-page objection by October 26, 2021).  Plaintiffs include this discussion as Defendant's MPSJ is still pending.

[2] Citations herein are to the supporting memorandum. ECF No. 65-1.

In doing so, the Proposed FAC withdrew allegations contained in the Complaint indicating that the MRF Plaintiffs had standing under ERISA, and clarified that the MRF Plaintiffs are Trustees with respect to a fund "whose expenditures are made in furtherance of one or more of the industrywide purposes set forth in section 5(b) of the Labor Management Cooperation Act of 1978." *See* Proposed FAC [Motion, Exh. A, ECF No. 65-3] at ¶¶ 2-8.

Plaintiffs' also elucidated that "Counts I and II of Plaintiffs' Proposed FAC simply clarify and refine claims pled in the Complaint."  Motion at 22 n.5.  As in the Complaint, the Proposed FAC alleged supplemental jurisdiction (Proposed FAC at ¶ 5).  No part of the Motion discussed the elements of a state law breach of contract claim as a proposed new claim.  The Motion did, however, discuss the viability of its <u>new</u> Proposed Tort Claims and unjust enrichment claim.  *See generally* Motion at 24-28.

However, in its Opposition to Plaintiffs' Motion filed September 14, 2021 (ECF No. 69) ("Opposition"), Defendant unilaterally declared the state law breach of contract claims to be "new" and concluded that said claims are preempted by federal labor law.  Opposition at 23;[3] *see also id.* at 23-24 (noting "to the extent

---

[3] Citing Defendant's supporting memorandum.

that Plaintiffs seek recovery under state law for breach of the collective bargaining agreement, their claims are preempted by federal labor law").

Defendant concluded in its Opposition that the proposed new claims (Counts III-VI of the Proposed FAC) were preempted by ERISA.  Opposition at 23 (arguing "Plaintiffs' state law claims would be preempted by the existing allegations and therefore should be dismissed as futile").  Defendant's Opposition argued that "Plaintiffs['] new state law claims seek recovery related to employee benefit plans[,]" without any substantive analysis.  In doing so, Defendant cited only to *Standard Oil Co. of California v. Agsalud*, 633 F.2d 760, 765 (9th Cir. 1980), aff'd, 454 U.S. 801 (1981), which held that "[t]he [Hawaii comprehensive Prepaid Health Care] Act directly and expressly regulates employers and the type of benefits they provide employees[] and therefore "[i]t must 'relate to' employee benefit plans").

No part of Defendant's Opposition cites to Section 502(a) of ERISA, 29 U.S.C. § 1132 or argues that Counts III-VI of the Proposed FAC should be preempted based on conflict preemption principles.

A telephonic hearing on the Motion was held on October 5, 2021.  At no point during the hearing did Defendant argue that ERISA conflict preemption bars the proposed new claims.  In fact, Defendant's counsel candidly disclosed that she

"had not intended on going into preemption as deeply[.]" ECF. No. 79 ("Transcript") at 12:8-9.

On October 6, 2021, the Court issued the Order which, in summary, determined that all proposed new claims were futile based on ERISA preemption, except the purportedly new state law breach of contract claims which were futile based on LMRA preemption.

## Plaintiffs' Objections to Futility Determination as to Count I of Proposed FAC

Plaintiffs object to the Magistrate Judge's determination that Plaintiffs were attempting to add new state law breach of contract claims under Count I.  Order at 5, 10.  Further, Plaintiffs object to the Magistrate Judge's determination that state law breach of contract claims under Count I of the proposed FAC are futile based on federal labor law preemption.  *See id.* at 7, 10.

The Court should reverse the Magistrate Judge's futility determination because a magistrate judge lacks authority to make a dispositive determination as to previously-pled claims.  The Complaint alleged supplemental jurisdiction, and the allegations therein put Defendant on notice that Plaintiffs had alleged that a contractual relationship existed, that said contract was breached, and that

Plaintiffs—as third party beneficiaries thereunder—were injured as a result.[4]  *See* Complaint ¶¶ 8-12, 17-21, 25, Prayer.

While these state law breach of contract claims may have been pled imperfectly in both the Complaint and the Proposed FAC, that does not alter the analysis.  *See Amfac Mortg. Corp. v. Arizona Mall of Tempe, Inc.*, 583 F.2d 426, (9th Cir. 1978) (noting "the complaint is construed in favor of the pleader" and "[a]ny doubts are resolved in favor of the pleader").  Defendant's Answer expressly sets forth an affirmative defense of preemption under the National Labor Relations Act, Answer ¶ 17, which would only apply if Defendant perceived state law claims being pled.

Thus, when the Magistrate Judge conducted a futility analysis as to Count I, which was a recast of Plaintiffs' existing breach of contract claim—simply consolidated into "Count I" in light of the need for enumerated counts in the Proposed FAC—the Court exceeded its jurisdictional authority.  *See Ingram v. Cates*, No. CV 12-7881-DOC (KK), 2015 WL 13874637, at *4 (C.D. Cal. Dec. 9,

---

[4] "To prevail on a breach of contract claim under Hawaii law, plaintiff must establish: (1) the contract at issue; (2) the parties to the contract; (3) whether plaintiff performed under the contract; (4) the particular provision of the contract allegedly violated by defendants; (5) when and how defendants allegedly breached the contract; and (6) how the plaintiff was injured."  *See Arc in Hawaii v. DB Ins. Co., LTD*, --- F. Supp. 3d ---, Civ. No. 20-00112-ACK-WRP, 2021 WL 2481672, at *5 (D. Haw. 2021).

2015*), report and recommendation adopted*, 2016 WL 11697573 (C.D. Cal. Jan 19, 2016) ("A magistrate judge exceeds his authority by issuing a[] final order on a dispositive matter." (citing *e.g.*, *Hunt v. Pliler*, 384 F.3d 1118, 1123 (9th Cir. 2004) ("[W]ith respect to dispositive matters, a magistrate is only permitted to make recommendations for final disposition by an Article III judge who reviews his findings and recommendation, if objected to, de novo.")).  On this basis, as to each of the Plaintiffs Trust Funds, Count I should not have been deemed futile.

Irrespective of jurisdictional authority, and even if the Court deems Count I to have asserted new state law contract claims, the Court should reverse the Magistrate Judge's determination that state law breach of contract claims are futile as to the MRF Plaintiffs.[5]  The MRF Plaintiffs are permitted to plead alternative state law breach of contract claims in the context of an ERISA and/or LMRA action.  *See Simonyan v. Countrywide Fin. Corp.*, No. CV 10–2455 AHM (VBKx), 2011 WL 12611772, at *8 (C.D. Cal. Jan. 26, 2011) (denying motion to dismiss as to breach of contract claim plead in the alternative to ERISA claim).

The purpose of alternative pleading in the ERISA context (which Plaintiffs maintain would apply equally in the LMRA context) has been explained within the Ninth Circuit as follows:

---

[5] Defendant does not appear to contend that the remaining Plaintiffs Trust funds are not ERISA Plans, nor does the Order make such findings.

-10-

> Generally, there is good reason for alternative pleading state and federal claims when there is doubt as to whether a particular plan falls under ERISA.  If the plaintiff brings only state law claims and the court determines there is an ERISA plan, the state law claims are preempted. But if the plaintiff brings only an ERISA claim and the plan turns out not to be an ERISA plan, the plaintiff is also out of luck.

*Delano v. Unified Grocers, Inc.*, No. 2:19-cv-00225-TLN-DB, 2020 WL 903197, at *4 (E.D. Cal. Feb. 25, 2020); *see also Coleman v. Standard Life Ins. Co.*, 288 F. Supp. 2d 1116, 1119-1121 (E.D. Cal. Oct. 14, 2003) (acknowledging that "it would be foolish to put all of one's eggs in either the ERISA or the state law basket" and concluding that "[t]he fact that the complaint in this case does not explicitly designate the ERISA and contract law actions as having been plead in the alternative is not dispositive[ of either claim]." (internal quotation marks, brackets, citations omitted)).

Applicable here, Defendant's MPSJ argues that Plaintiffs lack standing under the LMRA.  Defendant's MPSJ at 8-9.  While MRF Plaintiffs intend to oppose said motion if not denied as moot by this Court, this is precisely why alternative pleading is permissible.  Until the partial summary judgment motion is resolved, the MRF Plaintiffs should be permitted to pursue their state law breach of contract claims under supplemental jurisdiction.

-11-

**MRF Plaintiffs' Objection as to Futility**
**Determination Regarding Counts III, IV, V and VI of Proposed FAC**

The Court should reverse the Magistrate Judge's futility determination that these proposed new claims (Counts III-VI) are preempted by ERISA as to the MRF Plaintiffs (Order at 12-14) because the MRF Plaintiffs are not an ERISA plan.

The Proposed FAC itself alleges that the Market Recovery Fund is **not** an ERISA multi-employer benefit plan. *See* Proposed FAC at ¶ 4 (alleging that all Plaintiff Trust Funds are ERISA multi-employer benefit plans, **except** Market Recovery Fund). The Proposed FAC goes on to allege that the Market Recovery Fund is a joint labor management cooperation committee created under the Labor Management Cooperation Act of 1978. *See id.* at ¶ 8. In fact, even Defendant's Opposition expressly acknowledged that the Market Recovery Fund is to be distinguished from the other Trust Funds, which are multi-employer benefit plans under ERISA. Opposition at 23 n.1.

The Order permits leave for Plaintiffs to amend these allegations pertaining to the Market Recovery Fund which serve to, *inter alia*, moot Defendant's [pending] MPSJ to the extent it argues that the MRF Plaintiffs lack standing under ERISA. Since this is not an issue in dispute between the parties, as Defendant has never argued ERISA preemption as to the Market Recovery Funds claims, the Magistrate Judge's determination that these proposed new claims are preempted by ERISA (whether by express or conflict preemption) is reversible error under any

standard the Court chooses to apply.  At a minimum, it cannot be said that "no set

of facts can be proved under the" Proposed FAC "that would constitute a valid and

sufficient claim" with respect to the MRF Plaintiffs' Counts III-VI claims.  *See*

Order at 4-5 (quoting *Miller*, 845 F.2d at 214)); *see also Barahona v. Union Pac.

*R.R. Co.*, 881 F.3d 1122, 1134 (9th Cir. 2018) (applying "no set of facts"

standard).

<u>**Plaintiffs' Objection to Futility Determination
as to Counts IV, V, and VI of Proposed FAC**</u>

Plaintiffs object to the Magistrate Judge's determination that the Proposed

Tort Claims are preempted under ERISA.  *See* Order at 12-14 (concluding state

law claims are preempted by both "(1) 'express' preemption under 29 U.S.C. §

1144(a); and (2) 'conflict' preemption under 29 U.S.C. §1132(a)").  Further,

Plaintiffs object to the determination that these proposed new claims "are premised

on the existence of an ERISA plan and bear on an ERISA-regulated relationship;

thus, the claims are preempted" (Order at 13), and that the Proposed Tort Claims

have an impermissible connection with ERISA (Order at 14).  Finally, Plaintiffs

object to the determination that the Proposed Tort Claims seek "alternative

enforcement mechanisms" to ERISA, and thus are "preempted by ERISA under §

1132(a)."  Order at 17.

In analyzing ERISA preemption, courts look to "the objectives of the ERISA

statute as a guide" and "the starting presumption that Congress **<u>does not intend to</u>**

-13-

**supplant state law**, in particular state laws regulating a subject of traditional state power." *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 320, 325 (2016) (citations and internal quotations omitted) (emphasis added); *see also De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 814 (1997) (party arguing for ERISA preemption "bear[s] the **considerable burden** of overcoming the starting presumption that Congress does not intend to supplant state law" (internal quotation marks omitted) (emphasis added).

    1.    **Express Preemption**

ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. §1144(a). The Ninth Circuit has "identified two categories of state-law claims that relate to an ERISA plan—claims that have a reference to an ERISA plan, and claims that have an impermissible connection with an ERISA plan." *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 665 (9th Cir. 2016) (citations and internal quotation marks omitted); *see also* Order at 12 (quoting same).

"A state-law claim has a reference to an ERISA plan if it is premised on the existence of the ERISA plan or if the existence of the plan is essential to the claim's survival." *Depot,* 915 F3d at 665 (citations and internal quotation marks omitted). To determine whether a law has a forbidden "reference to" ERISA plans, the Ninth Circuit asks "whether (1) the law 'acts immediately and exclusively upon

-14-

ERISA plans,' or (2) 'the existence of ERISA plans is essential to the law's operation.'" *Golden Gate Rest. Ass'n v. City & Cty. of San Francisco*, 512 F.3d 1112, 1123 (9th Cir. 2008) (citation omitted)).

Common law fraud and negligent misrepresentation do **not** refer to ERISA plans, as each is a law of general applicability that neither acts immediately and exclusively upon ERISA plans, nor relies upon the existence of ERISA plans to operate. The elements of claims of fraudulent nondisclosure, intentional misrepresentation, and negligent misrepresentation are well-established under Hawaii law, and none of those elements mention or implicate ERISA.[6]

Based on this logic, courts have rejected the notion that express preemption applies to a misrepresentation claim. *See Wilson v. Zoellner*, 114 F.3d 713, 716-17

---

[6] "To determine if the elements of fraud have been pleaded to state a cause of action we look to state law." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (making no reference to ERISA); *see also* Motion to Amend at 25 (setting forth elements relating to Plaintiffs' Proposed FAC Counts IV and V: "[t]he elements . . . are: (1) false representations made by the defendant; (2) with knowledge of their falsity (or without knowledge of their truth or falsity); (3) in contemplation of plaintiff's reliance upon them; and (4) plaintiff's detrimental reliance." *Philadelphia Indem. Ins. Co. v. Ohana Control Sys., Inc.*, 289 F. Supp. 3d 1141, 1151 (D. Haw. 2018) (footnote, internal quotations, and citations omitted)); *id.* at 28 (elements relating to Plaintiffs' Proposed FAC Count VI: "Hawai'i law requires that "(1) false information be supplied as a result of the failure to exercise reasonable care or competence in communicating the information; (2) the person for whose benefit the information is supplied suffered the loss; and (3) the recipient relies upon the misrepresentation." *Smallwood v. NCsoft Corp.*, 730 F. Supp. 2d 1213, 1231 (D. Haw. 2010)).

(8th Cir. 1997) (explaining that Missouri common law on negligent

misrepresentation was of general application, made no reference to, and functioned

independently of ERISA); *see also Blue Cross of Cal. Inc. v. Insys Therapeutics

Inc.*, 390 F. Supp. 3d 996, 1004 (D. Ariz. 2019) ("Common law fraud does not

refer to ERISA plans, as it is a law of general applicability that neither acts

immediately and exclusively upon ERISA plans, nor relies upon the existence of

ERISA plans to operate.") (internal quotation marks and citation omitted)).

The inapplicability of express preemption as to misrepresentation claims

arising under common law was explained in detail in *Trustees of AFTRA Health

Fund v. Biondi*, 303 F.3d 765 (7th Cir. 2002), wherein the Seventh Circuit—

analyzing Illinois common law—explained that the "common law tort of

fraudulent concealment, a traditional state-based law of general applicability,

clearly makes no direct reference to ERISA plans nor relies on the existence of

such plans to operate." *Id.* at 778.  The *Biondi* court elaborated in that "the

Trustees' common law fraud claim does not implicate any of ERISA's

fundamental concerns; the Plan is merely the context in which Biondi's fraudulent

conduct occurred." *Id.* at 779; *see also Geller v. Cty. Line Auto Sales, Inc.*, 86 F.3d

18 (2d. Cir. 1996).

Thus, ERISA's express preemption's reach is not so broad as to bar common

law claims that function independently of ERISA.  *Cf. New York State Conf. of*

-16-

*Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995) ("If 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for really, universally, relations stop nowhere[.]" (brackets, citation, and some internal quotation marks omitted).

Here, the Magistrate Judge largely shifted the burden to Plaintiffs to explain why express preemption does <u>not</u> apply, as opposed to requiring Defendant to explain exactly why the existence of an ERISA plan is essential to a common law misrepresentation claim's survival. Transcript at 12:8-9 (Defendant's counsel admitting she "had not intended on going into preemption" in detail); *see also* Opposition at 23 (merely stating, after citing one case quoting 29 U.S.C. § 1144, "[i]t is clear that Plaintiffs['] new state law claims . . . seek recovery related to employee benefit plans").

In any event, the one case that Defendant relied upon in its Opposition, *id.* at 23, *Standard Oil Co. of California v. Agsalud*, 633 F.2d 760, 766 (9th Cir. 1980), *aff'd*, 454 U.S. 801 (1981), is easily distinguishable from the present case. In that case, the Court held that "[t]he [Hawaii comprehensive Prepaid Health Care] Act directly and expressly regulates employers and the type of benefits they provide employees[] and therefore "[i]t must 'relate to' employee benefit plans[.]" *Id.*

-17-

Here, the claims are common law tort claims, not statutes created by state legislature.  Instead, claims of fraudulent nondisclosure, intentional misrepresentation, and negligent misrepresentation are of general applicability and cannot be said to "directly and expressly regulate[] employers and the type of benefits they provide[.]"  *See id.* at 765 (acknowledging "[t]here is, however, nothing in the statute to support a distinction between the state laws relating to benefits as opposed to administration"—making no reference whatsoever to common law claims).  Based on the foregoing, it cannot be said that Defendant carried its considerable burden.

Nor can these common law Proposed Tort Claims be said to have an impermissible connection with ERISA, requiring a determination of express preemption.  In order to determine whether a state law has an impermissible "connection with" an ERISA plan, courts consider the objectives of ERISA and the intent Congress had in drafting ERISA's preemption provisions.  *See Rutledge v. Pharm. Care Mgmt. Ass'n*, --- U.S. ---, 141 S. Ct. 474, 480 (2020).

The goal of ERISA was "to make the benefits promised by an employer more secure by mandating certain oversight systems and other standard procedures."  *Gobeille*, 577 U.S. at 320-21; *see also Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990) ("Section 514(a) was intended to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the

-18-

goal was to minimize the administrative and financial burden of complying with

conflicting directives among States[.]").

> ERISA is therefore primarily concerned with pre-empting laws that require
> providers to structure benefit plans in particular ways, such as by requiring
> payment of specific benefits or by binding plan administrators to specific
> rules for determining beneficiary status. A state law may also be subject to
> pre-emption if . . . the state law force[s] an ERISA plan to adopt a certain
> scheme of substantive coverage.

*Rutledge*, 141 S. Ct. at 480 (internal citations and quotations omitted).

"A state law has an impermissible connection with ERISA if it governs a

central matter of plan administration or interferes with nationally uniform plan

administration," such as "by requiring payment of specific benefits or by binding

plan administrators to specific rules for determining beneficiary status." *Howard

Jarvis Taxpayers Ass'n v. Cal. Secure Choice Ret. Sav. Program*, 997 F.3d 848,

863 (9th Cir. 2021); *see also Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141,

147–48 (2001) ("[U]nlike generally applicable laws regulating 'areas where

ERISA has nothing to say,' which we have upheld notwithstanding their incidental

effect on ERISA plans, [a] statute [that binds ERISA plan administrators to a

particular choice of rules for determining beneficiary status] governs the payment

of benefits, a central matter of plan administration." (internal citations omitted;

brackets added)); *see also Gerosa v. Savasta & Co.*, 329 F.3d 317, 324 (2d Cir.

2003) (impermissible connection exists as to "state laws affecting the

-19-

determination of eligibility for benefits, amounts of benefits, or means of securing unpaid benefits").

A common law claim of misrepresentation pertaining to allegedly false representations by a contributing employer hardly compromises the purpose of Congress in enacting ERISA and does <u>not</u> impede federal control over the regulation of employee benefit plans.  To the contrary—as explained in *Geller*, "[e]nsuring the honest administration of financially sound plans is critical to the accomplishment of ERISA's mission."  86 F.3d at 22.  From a policy perspective, permitting employers to subvert their obligations under applicable collective bargaining agreements encourages fraudulent behavior.  If Defendant is not putatively held accountable for intentionally misrepresenting its monthly consolidated reports, moonlighting work, and failing to provide required contributions, contributing employers will be incentivized to disregard their bargained-for obligations.

Moreover, it cannot be said that a common law fraud claim "require[s] providers to structure benefit plans in particular ways, such as by requiring payment of specific benefits or by binding plan administrators to specific rules for determining beneficiary status," nor does it "force an ERISA plan to adopt a certain scheme of substantive coverage."  *See Rutledge*, 141 S. Ct. at 480 (internal citations and quotations omitted).  Thus, in looking to "the objectives of the ERISA

-20-

statute as a guide," *Gobeille*, 577 U.S. at 320, and "the starting presumption that Congress does not intend to supplant state law," *id.* at 325, the Proposed Tort Claims based upon laws of general applicability should not be deemed expressly preempted.

### 2.   **Conflict Preemption**

"[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy scheme conflicts with the clear congressional intent to make the ERISA exclusive and is therefore barred by conflict preemption." *Depot, Inc.*, 915 F.3d at 667 (internal quotation marks; citation omitted).  The Ninth Circuit has "distilled a two-part test for determining whether a state-law claim is [] preempted by ERISA § 502(a): 'a state law cause of action is completely preempted if (1) an individual, at some point in time, could have brought the claim under ERISA § 502(a)[], and (2) where there is no other independent legal duty that is implicated by a defendant's actions.'" *Fossen v. Blue Cross & Blue Shield of Montana, Inc.*, 660 F.3d 1102, 1107-08 (9th Cir. 2011) (citation and some internal quotation marks omitted)).  "Because this two-prong test is in the conjunctive, a state-law cause of action is preempted by § 502(a)[] only if both prongs of the test are satisfied." *Id.* at 1108 (formatting altered and citations omitted).

In support of its futility argument, Defendant's Opposition only asserted that "Plaintiffs' state law claims are preempted by ERISA" and that "[i]t is clear that Plaintiffs new state law claims . . . seek recovery *related to* employee benefit plans such as Plaintiffs." Opposition at 23 (emphasis added). Conclusory assertions aside, the "relate to" prong relied upon by Defendant pertains to express preemption (29 U.S.C. §1144(a)), and not conflict preemption (29 U.S.C. § 1132(a)). *See Depot*, 915 F.3d at 665-667. Thus, it cannot be said that Defendant met their "considerable burden" of establishing conflict preemption. *De Buono*, 520 U.S. at 814.

Burden aside, the Magistrate Judge's conflict preemption determination as to the Proposed Tort Claims is in error because an independent legal duty is implicated by Defendant's actions, and the proposed new claims do not conflict with ERISA's civil enforcement scheme. "Conflict preemption can bar a state-law claim even if the elements of the state cause of action do not precisely duplicate the elements of an ERISA claim, but a state-law claim is not preempted if it reflects an attempt to remedy a violation of a legal duty independent of ERISA[.]" *Depot, Inc.*, 915 F.3d at 667 (internal quotations, brackets and citations omitted). The independent legal duty analysis requires the Court to "determine whether the state law claims arise independently of ERISA or the plan terms," or, "[i]n other words, [the Court] must ask whether or not an independent duty . . . is implicated by [the]

-22-

defendant's actions." *Fossen*, 660 F.3d at 1110 (internal quotation marks and citations omitted).

Thus, by way of example, the Ninth Circuit has determined that claims by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits must be brought under ERISA Section 502, 29 U.S.C. § 1132. *Elliott v. Fortis Benefits Ins. Co.*, 337 F.3d 1138, 1144 (9th Cir. 2003). The rationale being that ERISA Section 502 is "the exclusive vehicle for actions by ERISA plan participants and beneficiaries asserting improper processing of a claim for benefits." *Id.* at 1143 (internal quotation marks and citation omitted) (not addressing third party recovery by trustees).

However, the Ninth Circuit has also explained that state law claims alleging misrepresentation related to violations of independent duties are not necessarily covered by conflict preemption, *Depot, Inc.*, 915 F.3d at 666-67. While the *Depot, Inc.* case is admittedly factually distinguishable from the present action—which involves Trustees of Taft-Hartley plans (or, as to the MRF Plaintiffs, a labor management cooperation committee) claiming against a contributing employer—the same concept of an independent duty owed under common law applies.

Here, Plaintiffs are entitled to allege common law tort claims based on Defendant owing duties to Plaintiffs independent of ERISA. By way of example, and as quoted in Plaintiffs' Motion, *Matsuda v. Wada*, 101 F. Supp. 2d 1315 (D.

-23-

Haw. 1999), states that "[f]raud can be committed by non-disclosure as well as by an affirmative misrepresentation. As explained in the Restatement (Second) of Torts: 'A **duty to disclose may arise** . . .'" with respect to misleading statements and/or false representations.  *Id.* at 1324 (emphasis added); *see also* Motion at 28 (citing *Smallwood v. NCsoft Corp.*, 730 F. Supp. 2d 1213, 1231 (D. Haw. 2010) (setting forth elements of common law cause of action and independent duty recognized in § 552 of the Restatement (Second) of Torts)).  Such duties arise under common law, not ERISA, and thus function independently of ERISA.[7]

In the Order, the Magistrate Judge concluded that the Proposed Tort Claims "cannot be said to exist independently of said agreements" because the Proposed FAC alleges that Defendant also has obligations under "the Bargaining Agreements and the Trust Agreements, to make contributions[.]"  *See* Order at 16-17 (citing paragraph 44 of Proposed FAC).

However, the Order's interpretation of the Proposed FAC is too narrow. The Magistrate Judge focused upon the fact that Plaintiffs are separately seeking contributions from Defendant.  *See* Order at 16-17.  The Proposed FAC, however,

---

[7] Moreover, conflict preemption "does not occur . . . if the state law has only a 'tenuous, remote, or peripheral' connection with covered plans, *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, n. 21 (1983), as is the case with many laws of general applicability[.]"  *D.C. v. Greater Washington Bd. of Trade*, 506 U.S. 125, 130 n.1 (1992) (formatting altered).

alleges a negligent or intentional misrepresentation (or a fraudulent non-disclosure) based on the common law duty to not mislead people to their detriment – in business settings or otherwise. *See Trs. of Nat. Asbestos Workers Med. Fund v. Wilson*, No. 2:12–cv–06449, 2014 WL 1329935, at \*4 (S.D.W.V. Mar. 28, 2014) (reasoning that both fraud and negligent misrepresentation claims "buttress ERISA's goals by protecting plans from the fraudulent actions of beneficiaries, and they do not conflict with the directives of other states or the federal government")

The Proposed FAC alleges that Defendant knowingly (or with reckless disregard to the truth) signed off on false or misleading monthly submissions to Plaintiffs in violation of inherent duties owed. *See, e.g.*, Proposed FAC at ¶¶ 74, 86; *see also id.* at ¶ 72 ("Defendant had an inherent duty to not make false claims, reports or submittals to the Trust Funds that exists independent of any applicable ERISA plan."). This was elaborated on by Plaintiffs' counsel during the hearing. *See* Transcript 6:2 (noting "the causes of action exist due to the inherent duties under common law"). While ERISA may be the context in which the fraud occurred, the Proposed Tort Claims are based on an independent common law duty requiring a participating employer to not lie, mislead and/or deceive. *See Biondi*, 303 F.3d at 777 (finding a "separate and distinct duty" to not make material misrepresentations regardless of the existence of an ERISA plan).

-25-

Even if consultation of the plans and trust agreements are required as it pertains to these Proposed Tort Claims, it cannot be said at this juncture that the Proposed Tort Clams "are based on no duties independent of ERISA or plan terms."  *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 121 F. Supp. 3d 950, 968 (C.D. Cal. 2015); *see also Blue Cross of Cal. V. Anesthesia Care Assocs. Med. Grp., Inc.*, 187 F.3d 1045, 1051 (9th Cir. 1999) (explaining that "the bare fact that the Plan may be consulted in the course of litigating a state-law claim does not require that the claim be extinguished by ERISA's enforcement provision.").

To embrace that conflict preemption applies here would be to determine that, in creating ERISA, Congress intended to immunize a contributing employer from fraud claims in the context of (as alleged) hiding projects, hours worked, and workers used (*e.g.*, Proposed FAC ¶¶ 23-37), and then falsely representing that zero hours of covered work occurred to the Plaintiffs (*e.g.*, *id.* ¶ 31).  Under such alleged facts, it is hard to imagine that the very statute intended to protect participants and beneficiaries would prohibit the prosecution of common law fraud-based claims.

Based on the foregoing, Plaintiffs request that the Court reverse the Magistrate Judge's futility determination as to the Proposed Tort Clams.

DATED: Honolulu, Hawaii, October 20, 2021.

-26-

TORKILDSON KATZ
HETHERINGTON HARRIS & KNOREK
Attorneys at Law, A Law Corporation


*/s/ Brian W. Tilker*
J. GEORGE HETHERINGTON
BRIAN W. TILKER
JACOB A. KAMSTRA
GEORGE M. KRAW
KATHERINE MCDONOUGH

Attorneys for Plaintiffs